[No. B026302. Second Dist., Div. One. Apr. 29, 1988.]

NATIONAL METAL & STEEL CORPORATION, Plaintiff in
Intervention and Respondent, v.
COLBY CRANE AND MANUFACTURING COMPANY et al.,
Defendants in Intervention and Appellants.

**COUNSEL**

Knapp, Petersen & Clarke, Cyril Czajkowskyj, Murchison & Cumming and James S. Williams for Defendants in Intervention and Appellants.

Jones, Nelson, Ford & Haley and Edward Wilson for Plaintiff in Intervention and Respondent.

## OPINION

LUCAS, J.—Colby Crane and Manufacturing Company and Bonneville Equipment, Inc., appeal from judgment against them and in favor of National Metal & Steel Corporation on its complaint in intervention.

### FACTS

John Branstetter worked as a crane operator for National Metal & Steel Corporation (National Metal) at its Terminal Island scrap yard in Wilmington. On January 7, 1981, he was operating a large crane in an attempt to lift a heavy ship rudder. The crane toppled over into the water, resulting in Branstetter's drowning death.

Branstetter's widow Millicent promptly began to receive compensation benefits from his employer, National Metal, under the federal Longshoremen's and Harbor Workers' Compensation Act (LHWCA; 33 U.S.C. § 901 et seq.). John's three nondependent adult children were not eligible for such benefits.

Millicent Branstetter and the three adult children filed a complaint for wrongful death in superior court. Named as defendants were Colby Crane and Manufacturing Company (Colby Crane), manufacturer of the crane involved in the accident, Bonneville Equipment, Inc. (Bonneville Equipment), a company which had inspected the crane some months before the accident, and the City of Los Angeles. Branstetter's employer, National Metal, filed a notice of lien pursuant to 33 United States Code section 933, seeking reimbursement of benefits paid to Millicent from any proceeds in that action.

A mandatory settlement conference was held just a few weeks prior to trial. At this conference, Millicent abandoned her claim for wrongful death, subsequently filing a formal waiver of any rights she had against any defendant for wrongful death. The three adult children agreed to a settlement whereby they would receive a total of $45,000 from defendants Colby Crane, Bonneville Equipment, and City of Los Angeles.

National Metal did not consent to this resolution of the action, and expressed its intention to sue to recoup the compensation benefits it had paid to Millicent. With the cooperation of defense counsel, National Metal filed a complaint in intervention, seeking recovery from defendants of benefits it had paid to the widow on two theories. The first cause of action alleged that the negligence of these defendants in intervention caused the industrial accident; the second cause of action alleged that the settlement of the wrongful death action without National Metal's consent included an agreement by defendants in intervention to be solely responsible for

repayment to National Metal of the compensation benefits paid to Millicent Branstetter. Prior to trial, the City of Los Angeles was dismissed from the action.

National Metal abandoned the negligence cause of action before trial. The trial court ruled in favor of National Metal on the second cause of action, finding that Millicent had settled the wrongful death action within the meaning of the LHWCA, and that defendants in intervention had agreed as part of this settlement that they would be responsible for satisfaction of any successful claim by National Metal for reimbursement of benefits paid. Judgment was entered in favor of National Metal and against Colby Crane and Bonneville for $74,000, the amount of the compensation benefits. Motions for new trial by both defendants in intervention were denied, and these parties appeal.

## BASIS OF DECISION

The trial court's judgment in favor of National Metal rested on two findings: 1) that Millicent Branstetter had settled her wrongful death claim with defendants in intervention within the meaning of the LHWCA, and 2) said settlement included an agreement by defendants in intervention that they would be responsible for the satisfaction of any successful claim by National Metal for reimbursement of compensation benefits paid to Millicent Branstetter under the Act. We find both determinations factually and legally incorrect.

## WAIVER OF WRONGFUL DEATH CLAIM

The trial court's conclusion that Millicent had settled her wrongful death claim was based on its understanding that "a claim by the heirs at law for wrongful death damages is single, unitary and indivisible" and thus the alleged waiver and abandonment of civil damages by Millicent Branstetter was without any legal effect.

The above-quoted language is known as the "one-action rule," a procedural device designed to insure that all statutory heirs bring their wrongful death claims in one action. (*Canavin* v. *Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512, 529-530 [196 Cal.Rptr. 82].) This rule was explained by the Supreme Court in *Cross* v. *Pacific Gas & Elec. Co.* (1964) 60 Cal.2d 690, 694 [36 Cal.Rptr. 321, 388 P.2d 353]: "In stating that an action for wrongful death is joint, it is meant that all heirs should join or be joined in the action and that a single verdict should be rendered for all recoverable damages; when it is said that the action is single, it is meant that only one

action for wrongful death may be brought whether, in fact, it is instituted by all or only one of the heirs, or by the personal representative of the decedent as statutory trustee for the heirs; and when it is said that the action is indivisible, it is meant that there cannot be a series of suits by heirs against the tortfeasor for their individual damages. [Citation.]"

The court in *Cross* further explained: "Although recovery under section 377 is in the form of a 'lump sum,' the amount is determined in accordance with the various heirs' separate interests in the deceased's life and the loss suffered by each by reason of the death, and no recovery can be had by an heir who did not sustain a loss. [Citation.] [¶] Accordingly, each heir should be regarded as having a personal and separate cause of action." (*Id.,* at p. 692.)

The personal and separate nature of each heir's cause of action for wrongful death has been acknowledged in cases where exception to the one-action rule has been allowed. For example, in *Valdez* v. *Smith* (1985) 166 Cal.App.3d 723, 727-729 [212 Cal.Rptr. 638], defendants were estopped from barring a subsequent wrongful death action by an additional heir where they knew of his existence at the time of the first action and had neither objected to the action proceeding without him nor sought to join him in the suit. In *Arizmendi* v. *System Leasing Corp.* (1971) 15 Cal.App.3d 730, 738-739 [93 Cal.Rptr. 411], a second wrongful death action by heirs who were minors was not barred by the settlement and dismissal with prejudice of a previous wrongful death action by the widow where the minors were never made parties to the first action and the widow had not sued in any capacity representative of their rights.

These cases fully recognize the individual nature of each heir's cause of action for wrongful death. The concern in each has been the fairness under unusual circumstances of permitting heirs to assert their separate wrongful death claims individually rather than in one joint action, a concern reflecting the procedural nature of the one-action rule while acknowledging the separateness of each heir's action.

Nothing in this rule requires an heir to bring a wrongful death action; nor does it prevent an heir from abandoning said action before trial. What this rule does require is that an heir who wishes to pursue a claim for wrongful death bring his or her action jointly with all other heirs, thereby protecting a defendant from having to defend several cases.

■ In the case before us, if Millicent Branstetter wished to pursue her claim for wrongful death, she was required to do so in an action with all

other heirs. The wrongful death lawsuit was filed by all heirs in accordance with this requirement. However, inasmuch as her claim for wrongful death was a separate, personal right, she was not precluded from waiving it and abandoning her action, even though the remaining heirs continued to pursue their claims to settlement. The trial court therefore erred in holding her abandonment was without legal effect.

### RIGHT OF REIMBURSEMENT FROM SETTLEMENT

■ It is settled law that an employer has a subrogation right to be reimbursed from a worker's net recovery from a third party for the full amount of compensation benefits already paid under the LHWCA. The employer may exercise this right by intervening in the worker's suit and asserting a compensation lien, which attaches to funds obtained by the worker either by settlement or by judgment. (*Peters* v. *No. River Ins. Co. of Morristown, N.J.* (5th Cir. 1985) 764 F.2d 306, 312.)

■ In the case before us, Millicent Branstetter, who had received compensation benefits, did not receive any funds in settlement of the wrongful death action; as we discussed above, she abandoned her claim for any such recovery prior to settlement by the remaining plaintiffs. Clearly, National Metal cannot be reimbursed from any recovery by her, as there was none.

The remaining plaintiffs were the worker's three adult children. As they were not dependent children, they were not eligible for LHWCA benefits, and thus, as National Metal acknowledged at trial, reimbursement was not available from their $45,000 recovery in the wrongful death action.

### RIGHT TO REIMBURSEMENT FROM THIRD PARTIES

■ National Metal argued that the defendants in intervention Colby Crane and Bonneville Equipment had, as part of the settlement of the wrongful death action, agreed to be solely responsible for satisfaction of any claim by National Metal for reimbursement of the LHWCA benefits paid to Millicent Branstetter.

Such an agreement was found and enforced in *Peters* v. *No. River Ins. Co. of Morristown, N.J., supra,* 764 F.2d 306. In that case, the injured worker received LHWCA benefits and sued the third party tortfeasor for negligence; the employer intervened seeking reimbursement of its compensation payments. The worker entered into a settlement with the third party. Under the terms of the settlement, the worker was to receive $60,000, and the third party tortfeasor was obligated not only to pay that sum, but also either to

settle or litigate the employer's claim for reimbursement of compensation benefits. (*Id.,* at p. 309.)

The court held that the employer's compensation lien was not defeated by the settlement agreement. Instead, what the agreement did was to transfer the obligation to automatically reimburse the employer from the worker to the third party tortfeasor. The employer did not have to establish the third party's liability in order to recover; recovery was based on his right to automatic reimbursement from the worker's third party recovery, satisfaction of which had been contractually transferred by the worker to the third party tortfeasor. (*Id.,* at p. 321.)

A similar situation brought the same result in *Speaks* v. *Trikora Lloyd P.T.* (S.D.Tex. 1987) 650 F.Supp. 958, 961, where the worker's third party settlement included an agreement that the worker would pay no part of the compensation lien, and that the third party tortfeasor would reimburse the compensation carrier for any amount which the case law required.

The facts in the case before us, however, do not reveal such an agreement by the defendants in intervention. At the mandatory settlement conference in which the underlying wrongful death action was resolved, the court attempted to clarify the procedural posture of the case: "Now, Mrs. Branstetter, you realize you are dropping out of the lawsuit, and as far as your daughters—they're all adults—this is a complete settlement as to them. [¶] Do you understand that?" Mrs. Branstetter answered in the affirmative, and the court continued: "Now, the case is going to proceed in a different way. I am led to believe that the steel company [National Metal] will carry their Workmen's Comp claim into the court system and litigate it. [¶] Is that your understanding?" Counsel for National Metal answered yes, and the court then asked counsel for defendants: "Will they have any problems filing a Complaint in Intervention by any of the defendants?" Counsel for Colby Crane, Bonneville Equipment and the City of Los Angeles all assured the court there would be no problem. This exchange does not support the trial court's finding that defendants in intervention had agreed to be responsible for satisfaction of National Metal's claim for reimbursement of compensation benefits.

Evidence at trial on the complaint in intervention was no more supportive of the agreement to pay theory. Counsel for Colby Crane testified that when he agreed to permit National Metal to file a complaint in intervention, it was his opinion that National Metal would have to prove liability against his client in order to recover. He did not seek a dismissal of the entire action at the time of settlement because he expected further litigation from

National Metal; he was willing to meet that litigation and prove it was a nonliability case. He considered this a low liability case for his client.

Counsel for Bonneville Equipment testified that when he agreed to vacate the trial date so that National Metal could file a complaint in intervention, he understood that his client would defend against any claim made by National Metal. He also testified that he was concerned about whether Millicent Branstetter received any money in settlement. It was his belief that if money was paid to her in settlement of the litigation, that would then expose the defendants to liability to the compensation carrier. By not paying any money to Millicent Branstetter and accepting a dismissal of her lawsuit, the compensation carrier would have nothing against which to present a lien claim and would then be required to seek recovery of the compensation benefits either by filing a complaint in intervention or by filing a separate lawsuit. Defendants intended, as always, to pay as little as possible and get out of the case as quickly and easily as possible.

As he explained: "[I]t appeared that the best way to get out of the case, considering all of the factors, was to accept a free dismissal from Mrs. Branstetter[,] to pay money to the Branstetter children and to then face a liability trial brought by the intervener [sic], or the compensation carrier on behalf of National Metal."

Asked why he didn't demand a dismissal of the entire lawsuit in order to insulate his client from possible exposure, counsel responded: "It was my belief that the compensation carrier could file a separate complaint seeking a recovery of compensation benefits that were paid and that in the event the action was dismissed, the compensation carrier would simply file a fresh action. [¶] And so rather than open a brand-new lawsuit, it was felt that filing a complaint in intervention would be the easier course." There was no evidence of any contrary intent or agreement by defendants in intervention.

Unlike the agreement by settling defendants in *Peters* that they, not the injured worker, would have to satisfy the employer's claim, " 'should it come to that' " (*Peters* v. *No. River Ins. Co. of Morristown, N.J., supra,* 764 F.2d at p. 321, fn. 6), the only agreement by settling defendants in our case was to permit the employer to bring its claim by intervening in the same action, rather than bringing a brand-new lawsuit. The trial court erred in construing this procedural courtesy as an agreement to satisfy the lien.

Defendants in intervention did not, by agreeing to the filing of a complaint in intervention, agree to permit the employer to automatically recover compensation benefits from them. They did agree to permit the employer

to attempt to prove their liability to the worker and, if able to do so, to recover the amount of benefits paid to the worker's widow. National Metal abandoned its cause of action for negligence before trial, and therefore did not establish liability of these defendants in intervention. For this reason, it now has no right to recoup from defendants in intervention the compensation benefits paid to Millicent Branstetter.

## DISPOSITION

The judgment is reversed. Appellants to recover costs on appeal.

Hanson, Acting P. J., and Devich, J., concurred.